UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBORAH ANN YOUNG,

                    Plaintiff,          **1:17-cv-00844-MAT**
          -v-                           **DECISION AND ORDER**

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                    Defendant.
_____

## INTRODUCTION

Deborah Ann Young ("Plaintiff"), proceeding *pro se*, brings this action under Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court is Defendant's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendant's motion is granted, the Commissioner's decision is affirmed, and the complaint is dismissed.

## PROCEDURAL BACKGROUND

On September 9, 2013, Plaintiff protectively filed applications for DIB and SSI, alleging disability as of May 28, 2013. Administrative Transcript ("T.") 198-200. The claims were

initially denied on November 20, 2013. T. 99-102. At Plaintiff's request, a hearing was conducted on January 14, 2016, in Buffalo, New York by administrative law judge ("ALJ") Lynette Gohr, with Plaintiff appearing *pro se*. T. 37-48. Upon Plaintiff's request, the hearing was adjourned so Plaintiff could obtain legal representation. On April 11, 2016, a second hearing was conducted in Buffalo, New York by ALJ Gohr. T. 49-84. Plaintiff appeared with her attorney, John Luhr, and testified. A vocational expert ("VE") also testified. *Id*. The ALJ issued a partially favorable decision on May 3, 2016. T. 8-22. Plaintiff appealed the decision to the Appeals Council ("AC"), which denied Plaintiff's request for review on June 19, 2017, making the ALJ's decision the final decision of the Commissioner. T. 1-6. This action followed.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. §§ 404.1520(a) and 416.920(b). Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through June 30, 1981. T. 14.

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 28, 2013, the alleged onset date. *Id*.

At step two, the ALJ determined that through Plaintiff's last insured date of June 30, 1981, there were no medical signs or

laboratory findings to substantiate the existence of a medically determinable impairment. *Id*. The ALJ further found that since the alleged onset date of May 28, 2013, Plaintiff had the following "severe" impairments: low back status-post lumbar laminectomy with degenerative disc disease; migraines; obesity; and cognitive disorder. T. 15.

At step three, the ALJ found that Plaintiff's impairments did not singularly or in combination meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*.

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 416.967(b). T. 16.

At step four, the ALJ concluded that Plaintiff had no past relevant work. T. 20. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform prior to turning fifty-five years old on June 17, 2013.[1] Accordingly, the ALJ found that Plaintiff was not disabled prior to June 17, 2013. T. 21. The ALJ further found

---

[1]
      In her decision, ALJ Gohr incorrectly noted Plaintiff's birthday as June 17th. T. 21. However, Plaintiff testified, and the administrative records indicate that Plaintiff's birthday is June 18th. *See* T. 53, 87. This minor error does not impact the Court's analysis, inasmuch as it favored Plaintiff.

that upon turning fifty-five, Plaintiff's age category changed. Taking Plaintiff's new age category, education, work experience, and RFC into consideration, the ALJ found there were no longer jobs that exist in significant numbers in the national economy that Plaintiff could perform. T. 21. The ALJ accordingly found that Plaintiff became disabled on June 17, 2013. *Id*.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the

Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## DISCUSSION

In a complaint filed with this Court on August 25, 2017, Plaintiff contends: (1) the ALJ improperly ignored Plaintiff's treating physician's statement that Plaintiff's onset date was November 8, 1980; (2) the ALJ improperly ignored prior favorable disability determinations and reports; and (3) the ALJ failed to consider Plaintiff's 2009 traumatic brain injury when assessing Plaintiff's RFC. In the instant motion for judgment on the pleadings, the Commissioner contends that these arguments lack merit and that the Commissioner appropriately found that Plaintiff was not entitled to benefits prior to June 17, 2013. For the reasons set forth below, the Court finds that Plaintiff's arguments are without merit and that the Commissioner's determination must be affirmed.

## I. Plaintiff Did Not Qualify for DIB Benefits

The record shows Plaintiff was last employed in November 1980. T. 251. In her decision, the ALJ determined Plaintiff met the insured status requirements of the Social Security Act ("the Act") through June 30, 1981. T. 14. Accordingly, to qualify for DIB, Plaintiff was required to demonstrate that she was under a disability that began on or before June 30, 1981. For the reasons

set forth below, the Court agrees with the ALJ's finding that Plaintiff was not under a disability as defined by the Act prior to her date last insured and accordingly was not eligible for DIB benefits.

Plaintiff sustained a back injury while at work in 1980, for which she received Workers' Compensation benefits for several years. T. 304, 309. However, the record contains no medical evidence prior to a 1988 letter to the Workers' Compensation Board from Dr. Ismet Hallac. T. 305. In the letter, Dr. Hallac reported Plaintiff had intermittent back pain and that her examination showed guarded back movements, markedly depressed knee and ankle reflexes, and a positive straight leg raising test at eighty degrees. Dr. Hallac noted that he advised Plaintiff to continue with her present course of activities and be re-examined in six to eight months. *Id.*

As noted above, at step two of the sequential analysis, the ALJ found that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment prior to Plaintiff's date last insured of June 30, 1981. T. 14. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (Plaintiff has the burden of proving at steps two through four of the sequential evaluation process that she had a medically determinable impairment that prevented her from working). The ALJ's conclusion is supported by the record. Dr. Hallac's letter from

1988 (seven years after the date last insured) does not support the conclusion that Plaintiff was under a disability as defined in the Act prior to June 30, 1981, nor does any other medical evidence in the record. Plaintiff thus failed to meet her step two burden of proving she had a medically determinable impairment that prevented her from working. Because Plaintiff failed to meet this burden by supplying any medical evidence demonstrating she was under a disability prior to June 30, 1981, she was not disabled within the meaning of the Act and thus was not entitled to DIB. *See Larocque v. Astrue*, No. 06-CV-0316-A(F), 2008 WL 4104522, at *4-5 (W.D.N.Y. Aug. 29, 2008) (plaintiff was ineligible for DIB where substantial evidence supported ALJ's finding that plaintiff did not have a medical impairment prior to the date last insured because the record contained no medical evidence for the relevant period).

Plaintiff argues that her treating physician Dr. Michael Jordan's statement that Plaintiff's approximate onset date was November 8, 1980, should constitute the medical evidence required to establish a medically determinable impairment prior to Plaintiff's date last insured. For the reasons set forth below, the Court finds this argument unavailing.

Plaintiff began treating with Dr. Jordan in 2013. T. 57. On March 14, 2016, Dr. Jordan completed a medical statement for Social Security disability claim. T. 640-41. Dr. Jordan opined that Plaintiff had moderate pain from standing for thirty minutes at one

time, sitting for two hours at one time, lifting ten pounds on an occasional basis, lifting five pounds on a frequent basis, and occasionally bending and stooping. T. 640. He noted that Plaintiff's approximate onset date of her low back pain was November 8, 1980. T. 641.

Dr. Jordan's statement regarding Plaintiff's limitations as of 2016 is not acceptable as medical evidence for a period three decades before his treatment of Plaintiff. Dr. Jordan was not a "treating physician" prior to Plaintiff's date last insured, and has no special knowledge regarding her condition at that time. *Monette v. Astrue*, 269 F. App'x 109, 112 (2d Cir. 2008) (unpublished opn.) (ALJ not required to give controlling weight to doctor's opinion where doctor "was not a treating physician during the time in question") (citing *Arnon v. Bowen*, 882 F.2d 34, 41 (2d Cir. 1989) (finding that a doctor who did not treat plaintiff during the relevant period was not a "treating physician" within the meaning of the rule, because "there simply was no ongoing physician-treatment relationship" and the doctor was therefore "not in a unique position to make a complete and accurate diagnosis" for the relevant period)). Dr. Jordan's statement regarding the approximate onset date was not based on his medical knowledge of Plaintiff's impairments, but was instead apparently based on Plaintiff's reports. Accordingly, the Court finds that Dr. Jordan's 2016 medical statement regarding Plaintiff's condition in 1980 is

not probable and does not serve as evidence establishing a medically determinable impairment prior to June 30, 1981.

For all the foregoing reasons, the Court finds the ALJ properly determined Plaintiff was not eligible to qualify for DIB benefits. Accordingly, remand is not warranted on this basis.

## II. The ALJ's Finding that Plaintiff Was Not Entitled to SSI Prior to June 17, 2013, Is Supported by Substantial Evidence

Plaintiff also argues the ALJ erred in determining Plaintiff's application for SSI, because she failed to consider Plaintiff's 2009 traumatic brain injury and did not include any cognitive limitations when assessing Plaintiff's RFC. For the reasons set forth below, the Court finds that any error by the ALJ in considering Plaintiff's SSI application was harmless.

As a threshold matter, the Court notes that Plaintiff applied for SSI on May 28, 2013. (T. 177). "SSI benefits are only available from the date of the application." *Fessett v. Barnhardt*, No. 6:03-CV-1004, 2008 WL 819737, at *2 n.3 (N.D.N.Y. Mar. 25, 2008); *see also* 20 C.F.R. § 416.335 (the earliest month for which SSI benefits can be paid is "the month following the month you filed the application"). Moreover, the ALJ found that Plaintiff was disabled and entitled to SSI as of June 17, 2013. Accordingly, the sole period of SSI benefits in question in this matter is May 28, 2013, through June 17, 2013.

### A. Plaintiff's Cognitive Impairments

On October 31, 2009, Plaintiff presented to Dr. Minsoo Kang for a neurological consultation. T. 593-94. Plaintiff reported she had been involved in a motor vehicle accident in February 2009 and had been experiencing pounding, throbbing headaches since then. T. 593. Plaintiff further reported she fell and hit her head on concrete on October 6, 2009 and went to Kenmore Mercy Hospital. *Id*. A CT-scan of the brain showed no acute intracranial process. However, at the consultation, Plaintiff reported to Dr. Kang that she continued to have severe headaches associated with light and noise sensitivity, as well as nausea, vomiting, pain and tenderness in the neck, and difficulty concentrating. *Id*. Dr. Kang assessed Plaintiff with postconcussive syndrome, recommended she undergo an MRI and try various medications for her pain. T. 594.

On June 16, 2011 and June 21, 2011, Plaintiff underwent a cognitive and psychological evaluation by Dr. Michael P. Santa Maria at Dr. Kang's request. T. 316-22. Plaintiff reported that since her fall in October 2009 she had experienced marked neurological difficulties, including difficulty recalling details of conversations, difficulty remembering names, and difficulty with navigation and directions. T. 316.

Plaintiff performed poorly on a number of neuropsychological tests, including intelligence, language, spatial abilities, learning and memory. T. 318-20. However, Dr. Santa Maria also reported that Plaintiff's performance across multiple memory effort

measures was well-below established cutoffs for adequate effort. T. 322. Dr. Santa Maria noted that this marked discrepancy was incompatible with a history of reported traumatic brain injury with loss of consciousness of a few seconds. *Id*. Dr. Santa Maria also reported a marked disparity between Plaintiff's speech between his examinations on June 16, 2011 and June 21, 2011. Specifically, he noted Plaintiff demonstrated marked word-finding problems in conversation on June 21, 2011, only after she overtly reported having such problems. *Id*. Dr. Santa Maria opined his findings were compatible with poor effort and malingered cognitive impairment. He also noted that his findings raised the question of symptom exaggeration with regard to Plaintiff's alleged injuries of 1980, 1990, and 2009. *Id*. Dr. Santa Maria assessed Plaintiff with malingering, pain disorder associated with a combination of psychological and physiological factors, personality disorder, and noted there was an absence of evidence of any persisting measurable postconcussive symptomatology. T. 321.

On November 4, 2013, Dr. Kristina Luna performed a psychiatric evaluation on Plaintiff at the Social Security Administration's request. T. 349-53. Upon examination, Plaintiff exhibited stammering speech, with impaired expressive and receptive language due to delayed processing and response time. T. 351. Plaintiff's concentration was mildly impaired due to limited intellectual functioning secondary to head trauma. Dr. Luna did not formally

assess Plaintiff's intellectual functioning, but she noted it appeared to be in the borderline range of functioning. Plaintiff exhibited good insight and judgment. *Id*.

Dr. Luna opined that Plaintiff had no limitation in her ability to make appropriate decisions and appropriately deal with stress and was only mildly impaired in her ability to follow and understand simple directions and instructions, perform simple tasks independently, learn new tasks, and relate adequately with others. T. 352. Dr. Luna further opined that Plaintiff was moderately limited in her ability to maintain attention and concentration, learn new tasks, and perform complex tasks independently, noting that Plaintiff would need supervision. *Id*.

In her decision, the ALJ gave Dr. Luna's opinion great weight, noting it was based on an examination by a doctor with programmatic knowledge and was consistent with the record. T. 20. The ALJ gave Dr. Santa Maria's opinion little weight because he was not a treating provider and his opinion was not based on a longitudinal medical history. T. 20.

**B.    The VE's Testimony**

At the hearing, the ALJ posed two hypothetical questions to the VE. Both of the hypothetical questions included several non-exertional limitations and each had various exertional limitations. Specifically, both hypotheticals limited the individual to simple, routine and repetitive tasks, with minimal changes in work routine

and processes, and occasional interaction with supervisors, coworkers and the public. T. 81. The VE testified that an individual with those non-exertional limitations, coupled with the ability to perform a full range of medium work, with the additional limitations of never working at unprotected heights or around moving mechanical parts, and occasional stooping, kneeling, crouching and crawling, would be capable of work as a kitchen porter/dishwasher, hand packer, or packaging machine operator when. T. 81-82. The VE further testified that a hypothetical individual with the same limitations noted above, and the additional exertional limitations of the need to change positions after forty minutes of standing and no prolonged walking for more than twenty minutes at a time, would be capable of working as a laundry worker 2, packaging machine tender, and warehouse work. T. 82-83.

**C. Any Error Was Harmless Because the ALJ Incorporated Nonexertional Limitations Related to Plaintiff's Migraines and Cognitive Impairment in the RFC**

At step two, the ALJ found that Plaintiff's severe impairments since the alleged onset date of May 28, 2013, included migraines and a cognitive disorder. T. 15. "When finding an impairment severe at step two of the sequential analysis, the ALJ is, by definition, finding that the impairment significantly limits the claimant's physical or mental ability to perform basic work activities." *Green v. Berryhill*, No. 1:17-CV-00853-MAT, 2018 WL 4764895, at *5 (W.D.N.Y. Oct. 2, 2018) (citing 20 C.F.R. § 404.1520(c)); *see also*

20 C.F.R. § 416.920(c). Accordingly, the ALJ is required to provide a discussion of how each severe impairment impacts the claimant's ability to perform work-related activities. *See*, *e.g.*, "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Marullo v. Colvin*, No. 12-CV-871 MAT, 2014 WL 5465458, at *6 (W.D.N.Y. Oct. 28, 2014) (citing SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. 1996). The ALJ did not specifically mention Plaintiff's migraines and cognitive disorder in her explanation of how the evidence supported her RFC determination. Arguably, this was error. *See Green v. Berryhill*, No. 1:17-cv-00853-MAT, 2018 WL 4764895, at 5 (W.D.N.Y. Oct. 2, 2018) (finding error where ALJ included no meaningful discussion of the impact of claimant's headaches or of any limitations associated with them in the RFC).

However, any error by the ALJ was ultimately harmless, because the ALJ included nonexertional limitations on work-related mental activities in the hypotheticals posed to the VE ,and the VE testified that an individual with such limitations would be capable of work available in the national economy. *See Burkley v. Colvin*, 284 F. Supp.3d 420, 424 (W.D.N.Y. 2018) (ALJ's omission of a specific postural limitation in her written decision was harmless error because the VE testified there were positions existing in

significant numbers within the national economy that could be performed with that limitation); *Wheeler v. Comm'r of Soc. Sec.*, No. 3:15-CV-105, 2016 WL 958595, at *7 n. 13 (N.D.N.Y. Mar. 7, 2016) ("Any error in the ALJ's written opinion is harmless because the hypothetical question posed to the VE did have the appropriate limitations expressed.").

At the hearing, the ALJ accounted for Plaintiff's migraines and cognitive disorder by including several non-exertional limitations in both of the hypotheticals posed to the VE. *See* T. 81-83. Specifically, the hypotheticals limited the individual to simple, routine and repetitive tasks, with minimal changes in work routine and processes, and only occasional interaction with supervisors, coworkers and the public. T. 81. These hypotheticals fully accounted for the mild and moderate cognitive limitations identified by Dr. Luna. The VE testified that an individual with those limitations would be capable of performing several jobs that exist in significant number in the national economy. T. 81-83. As such, the Court finds any error in omitting cognitive limitations from the RFC finding was harmless. *See Buckley*, 284 F. Supp. 3d at 424; *see also*, *e.g.*, *Landers v. Colvin*, No. 14-CV-1090S, 2016 WL 1211283, at *4 (W.D.N.Y. Mar. 29, 2016) (finding that claimant's moderate limitations on concentration and attention, maintaining a regular schedule and attendance, and functioning socially, were

accounted for in RFC limiting claimant to simple, repetitive and routine tasks in a low-contact work environment).

For the reasons set forth above, the Court finds that any error by the ALJ in failing to reference Plaintiff's migraines and cognitive disorder in the narrative discussion was harmless. The ALJ thoroughly discussed and considered Plaintiff's treatment history, her statements concerning her daily activities, as well as the medical opinions regarding Plaintiff's functional mental limitations, and incorporated them into the RFC. Accordingly, the Court finds that the RFC is consistent with the record as a whole and is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed. The Commissioner's motion for judgment on the pleadings (Docket No. 22) is granted. Plaintiff's complaint is dismissed with prejudice. The Clerk of Court is directed to close this case.

**SO ORDERED.**


**s/ Michael A. Telesca**
_____
   HON. MICHAEL A. TELESCA
United States District Judge


Dated:    January 10, 2019
          Rochester, New York